### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SKY CAPITAL GROUP, LLC, an Idaho limited liability company, d/b/a Roady's Truck Stops, <br><br>        Plaintiff, <br><br> vs. <br><br> LAURA ROJAS, an individual; CHUCK WITZEL, an individual; JOHN DOES 1-10; and JOHN DOE CORPS 1-10, <br><br>        Defendants. | Case No.  1:09-CV-00083-EJL <br><br> **MEMORANDUM ORDER** |

Before the Court in the above-entitled matter is the Plaintiff's motion for preliminary injunction.  The parties have filed their responsive briefing on the motion and the matter is ripe for the Court's consideration.  Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.  Local Rule 7.1(d)(2)(ii).

### Factual and Procedural Background

On February 3, 2009, the Plaintiff, Sky Capital Group, LLC, filed a complaint in Idaho state court against the Defendants, Laura Rojas and Chuck Witzel, who were

MEMORANDUM ORDER - 1

employees of two companies purchased by Roady's in early 2007.[1]  After Roady's purchased the two companies, it hired the Defendants as Roady's employees and retained them in their positions as Regional Managers.  (Dkt. No. 1, p. 3).   On November 24, 2008, both Defendants ended their employment with Roady's.   Thereafter, Roady's alleges the Defendants unlawfully accessed Roady's administrative and email servers for the purpose of stealing trade secrets and other proprietary information.   (Dkt. No. 1, Ex. 11). Specifically, Roady's contends that the Defendants accessed and stole their secret and proprietary information in the form of customer lists, pricing information, and marketing information.  Roady's claims the Defendants engaged in such conduct for the purpose of starting their own company to directly compete with Roady's.  As a result, Roady's initiated this lawsuit against the Defendants claiming:  Breach of Idaho Trade Secrets Act; Tortious Interference with Prospective Economic Advantage; Tortious Interference with Contract; Unfair Competition; Conversion; Breach of Contract and Implied Covenants; and Slander and Business Disparagement.  (Dkt. No. 1).[2]  Roady's also filed the instant motion for preliminary injunction seeking to enjoin the Defendants from "using, disclosing, or transmitting any and all information improperly procured while Defendants were employed with Roady's, and improperly procured through access to Roady's computer systems and e-mail servers after terminating their employment with Roady's.  The information includes but

---

[1]  Both Defendants are located outside of Idaho with Laura Rojas being a resident of the state of Florida and Chuck Witzel being a resident of the state of Wisconsin.  (Dkt. No. 7, p. 3).

[2]  Roady's initially filed its complaint in Idaho state court and it was later removed by the Defendants to this Court.  (Dkt. No. 5).  Roady's filed a motion to remand which was later withdrawn.  (Dkt. No. 20).

MEMORANDUM ORDER - 2

is not limited to: customer lists, vendor lists, pricing information, marketing information and other valuable customer and company information."  (Dkt. No. 3, pp. 1-2).  Defendants oppose the motion.

### Standards of Law

Preliminary injunctions are designed to preserve the status quo pending the ultimate outcome of litigation and to prevent irreparable harm.  See Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  They are governed by Federal Rule of Civil Procedure 65(a).  While courts are given considerable discretion in deciding whether a preliminary injunction should enter, injunctive relief is not obtained as a matter of right and it is considered to be an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.  See Sampson v. Murray, 415 U.S. 61 (1974); Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960); and Stanley v. Univ. of Southern California, 13 F.3d 1313 (9th Cir. 1994).  "A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  Saini v. International Game Tech., 434 F.Supp.2d 913, 919 (D. Nev. 2006) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 2948 (2d ed.1995)).

Until recently the preliminary injunction standard in the Ninth Circuit was that a party is entitled to a preliminary injunction when it can demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence

MEMORANDUM ORDER - 3

of serious questions going to the merits, where the balance of hardships tips sharply in plaintiff's favor.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-05 (9th Cir. 2000).  The Supreme Court, however, found the "possibility of irreparable harm" standard to be too lenient and held that a plaintiff must demonstrate that irreparable injury is "likely in the absence of an injunction."  Winter v. Natural Resources Defense Council, ___ U.S. ___, 129 S.Ct. 365, 375 (2008).  "Issuing a preliminary injunction based only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id. at 375-76 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)).  Because a preliminary injunction is an extraordinary remedy, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  Id. at 376 (citing Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)).  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Id. at 376-77 (citations and quotations omitted).  Thus, no longer are plaintiffs granted the presumption of irreparable harm upon a showing of a likelihood of success on the merits.  Instead, plaintiffs seeking a preliminary injunction must establish they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  Jacobsen v. Katzer, CV 06-01905-JSW, 2009 WL 29881 *8 (N.D. Cal. Jan. 5, 2009).  The Ninth Circuit recently recognized the

MEMORANDUM ORDER - 4

applicability of the <u>Winter</u> decision in this Circuit and stating the rule as: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>See</u> <u>American Trucking Ass'ns, Inc. v. City of Los Angeles</u>, ___ F.3d ___, 2009 WL 723993 *4 (9th Cir 2009) 08-56503 (quoting <u>Winter</u>, 129 S.Ct. at 374). This Court will apply the standard articulated in <u>Winter</u> and recognized in this Circuit.

**Analysis**

I.    **Likelihood of Success on the Merits**

      A.    **Idaho Trade Secrets Act Claim ("ITSA")**

The parties agree that "[i]n order to prevail in a misappropriation action under the ITSA, the plaintiff must show that a trade secret actually existed. Without a proven trade secret there can be no misappropriation, even if the defendants' action was wrongful." <u>Basic American, Inc. v. Shatila</u>, 992 P.2d 175, 183 (Idaho 1999) (citing I.C. § 48-801) (citations and quotations omitted). A "trade secret" is defined by the ITSA as:

> (5) "Trade secret" means information, including a formula, pattern, compilation, program, computer program, device, method, technique or process, that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy....

MEMORANDUM ORDER - 5

Id. at 183-84 (quoting Idaho Code § 48-801(5)(a)-(b)).  The parties also agree that customer

lists are a type of information that can be protected as a trade secret.  (Dkt. Nos. 9 p. 5, 14

p. 9) (citing Northwest Bec-Corp. v. Home Living Serv., 41 P.3d 263, 267 (Idaho 2002)).

The parties disagree, however, over whether the materials here are trade secrets.

Roady's points to three protectable trade secrets the confidentiality of which its

success in the industry is based: "1) prices and discounts; 2) marketing and sales presentation

materials; and 3) strategically compiled customer and vendor lists."  (Dkt. No. 27, p. 2).

Roady's argues its customer lists, pricing information, and marketing information are trade

secret because they derived independent economic value giving Roady's a significant

competitive advantage in the market.  (Dkt. No. 9, pp. 5-6).  Roady's contends that it spend

considerable amounts of time and effort in developing these materials and has taken

reasonable precautions to maintain the secrecy of this proprietary information.  Defendants

disagree arguing that the information in the materials is generally known to the public and

readily ascertainable by other people through proper means.  Defendants point out that

Roady's public website (www.roadystruckstop.com) contains its customer lists, which is

typical in the industry.  Defendants also point out that the information is contained in the

National Truck Stop Directory.  (Dkt. No. 14, p. 5).  Further, Defendants argue "there are

no secrets in the industry" and that all marketing groups in this industry do primarily the

same thing with the same vendors and fuel networks offering the same discounts.  (Dkt. No.

14, p. 11).  Defendants further argue the information they have was acquired through their

own labor and experience and that they did not need to take any information from Roady's

MEMORANDUM ORDER - 6

because they were the source of Roady's information.  In sum, Defendants maintain that the materials are not trade secrets and "emphatically deny" taking any of Roady's trade secret or proprietary information after their termination and using such information in their new business venture.  (Dkt. No. 14, p. 13).

In the case cited to by both parties, <u>Northwest Bec-Corp</u>, the parties agreed that the customer list were trade secrets under Idaho Code § 48-801.  The issue in that case was "whether actual misappropriate occurred."  <u>Northwest Bec-Corp</u>, 41 P.3d at 267.  Here, the parties do not agree that the customer lists are trade secrets; with Defendants arguing the information used to create the lists and compilations is generally known and readily ascertainable in the industry and that other similar businesses have the same lists.  (Dkt. No. 14, p. 5).

In determining whether Roady's materials are "readily ascertainable," the Court finds useful the definition of that term as set forth by the drafters of the Uniform Trade Secret Act: "Information is readily ascertainable if it is available in trade journals, reference books, or published materials." Uniform Trade Secret Act § 1, Commissioners' Comment, 14 uniform Laws Annotated 439 (1990); <u>see</u> <u>Basic American</u>, 992 P.2d at 184.  Although all of the Restatement's factors no longer are required to find a trade secret, courts in Uniform Trade Secrets Act jurisdictions often apply factors from the Restatement because the factors still provide helpful guidance to determine whether the information in a given case constitutes 'trade secrets' within the definition of the statute.  <u>Basic American</u>, 992 P.2d at 184 (citation omitted).  The Restatement factors are: "(1) the extent to which the information is known

MEMORANDUM ORDER - 7

outside [the plaintiff's] business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended by him in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Id. (citing Restatement of Torts § 757, comment b (1939)).  "All of these factors address the issue of whether the information in question is generally known or readily ascertainable." Id.

After considering these factors, the Court concludes that Roady's has demonstrated that some of its pricing and discount information may be confidential and/or trade secret. Some general information regarding Roady's Rewards and Fuel Card is publicly available on the website.  However, the website requires a vendor login, comprised of a username and password, in order to access more specific information regarding Roady's vendors and Fuel Buying Forecast.  As such, these materials are not generally accessible to people outside of Roady's and is information which likely constitutes trade secret or confidential information.

The Court finds that Roady's has not demonstrated that its customer lists are not generally known or readily ascertainable in the industry.  Though true that the information on Roady's internal server and email are password-protected, information regarding Roady's customers is available on its public website and in the National Truck Stop Directory.  In terms of vendors, the Defendants claim there are no secrets in this industry and that everyone uses the same vendors.  Roady's argues that it expended a great deal of time compiling its vendor lists in such a way that the lists afford Roady's a competitive advantage. (Dkt. No.

MEMORANDUM ORDER - 8

27, pp. 4-5).  Defendants assert that Roady's "compilation process is neither sophisticated, difficult nor particularly time consuming.  All competitors in the industry have equal access to the same information...."  (Dkt. No. 14, p. 11).  In fact, Defendants argue the lists and compilations are easily developed.  Though it may be the case that the same vendors are used throughout the industry, the Court finds Roady's has shown a likelihood of success that its compilations of discounts negotiated with vendors is confidential trade secret information. The pricing and discount information is not contained in the public domain as with the customer lists.  In particular, the information in the Vendor Quick Reference Sheet is very specific and particular to Roady's and clearly compiled by Roady's for Roady's employees. (Dkt. No. 23, Ex. H).

As to Roady's marketing and sales presentations the Court finds Roady's has not demonstrated a likelihood of success in establishing these as trade secrets.  (Dkt. No. 27, p. 4).  These materials do not appear to contain the same kind of compilation of discounts and pricing as the Quick Vendor Reference Sheets.  Instead, these materials are a somewhat broader outline of what Roady's has to offer to potential customers.

Based on the foregoing, the Court finds the customer lists and marketing presentation materials alleged by Roady's to be trade secret are " generally known" or "readily ascertainable."  However, Roady's has shown a likelihood of success of showing the vendor information and information regarding Roady's pricing and discounts are confidential and/or trade secrets.  The Court also finds that Roady's has demonstrated that it has taken reasonable efforts under the circumstances to maintain the secrecy of the information

MEMORANDUM ORDER - 9

contained on its servers.  Roady's took reasonable efforts to maintain the secrecy of its

information and the Defendants accessed its password-protected computer system and email

servers following their termination of employment with Roady's to access and take Roady's

proprietary information and use that information to compete with Roady's.  (Dkt. No. 9, p.

7).

### B.    Misappropriation Claim

The ITSA defines "misappropriation" as:

(a) Acquisition of a trade secret of another by a person who knows or has
reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied
consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret;

Idaho Code § 48-801(2).  To prevail on the misappropriation claim, Roady's must show that

a trade secret existed and the Defendants acquired, disclosed, or used the trade secret by

improper means.  See Northwest Bec-Corp, 41 P.3d at 268; Basic American, Inc. v. Shatila,

992 P.2d 175, 183 (Idaho 1999).  The parties do not dispute the requirements for this claim.

(Dkt. No. 9 p. 6, Dkt. No. 14 p. 12).

The Defendants maintain the information is not proprietary as they were the source

of the information and/or it was not trade secret information.  "In order to prevail in a

misappropriation action under the ITSA, the plaintiff must show that a trade secret actually

existed.  Without a proven trade secret there can be no misappropriation, even if the

MEMORANDUM ORDER - 10

defendants' action was wrongful." <u>Basic American</u>, 992 P.2d at 183 (citations and quotations omitted). The Court finds Roady's has not demonstrated a likelihood of success on this claim as to the customer lists and market presentation materials as it has not shown the information allegedly taken by Defendants constitutes trade secret information. As to the other materials, the Court determined above that Roady's is likely able to show they are confidential and/or trade secrets.

Even if the material is deemed a trade secret, Defendants also dispute taking and/or using any trade secret or confidential information. Roady's points to the Defendants' actions in accessing their Roady's email and forwarding information to their personal accounts. The Court finds Roady's is likely to be able to show that the Defendants took the materials improperly in light of the email evidence. Roady's provided exhibits of the emails containing the materials at issue that were sent by the Defendants' Roady's accounts to their personal accounts after their employment had ended. Certain of the emails contain a standard confidentiality clause at the bottom stating: "[t]he information transmitted is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking in reliance upon this information by persons or entities other than the intended recipient is prohibited." (Dkt No. 23, Ex. I). Further, with the exception of the list of customers and market presentations, the information contained within the materials was not public or able to be found in the public domain.

In particular, as to the Vendor Quick Reference Sheet, the original email was sent to the Defendants by Richard Bogenholm and states "This is my latest cheat sheet/ reference sheet" and includes as an attachment a five page document. (Dkt. No. 23, Ex. H). The plain literal text of the email evidences that the information on the Vendor Quick Reference Sheet was compiled by Mr. Bogenholm; not either of the Defendants. As such, it is at the very least the work product of Roady's and could likely be proprietary information of Roady's. As discussed below, Defendants disclosed the information without Roady's consent. As such, the Court finds, Roady's has demonstrated a likelihood of success on their misappropriation claim.

### C.      Tortious Interference with Prospective Economic Advantage Claim

To establish a claim for interference with a prospective economic advantage, Roady's must show: "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted." Cantwell v. City of Boise, 191 P.3d 205, 216 (Idaho 2008). "This tort requires a showing that the interference was wrongful beyond the fact of interference itself." Commercial Ventures, Inc. v. Rex M. & ynn Lea Family Trust, 177 P.3d 955, 964 (Idaho 2008) (citation omitted).

Defendants contend that Roady's has not demonstrated any of these elements and asserts again that the information was common knowledge in the industry and they did not

MEMORANDUM ORDER - 12

take and/or use the information.  (Dkt. No. 14, pp. 14-15).  Roady's argues "as recent employees of Roady's, Defendants clearly recognize the existence of a valid economic expectancy.   Defendants also intentionally and wrongfully interfered with Roady's expectancy by unlawfully entering Roady's computer systems to view and/or record Roady's proprietary information."  (Dkt. No. 9, p. 7).  Roady's maintains there is little customer turnover in the industry which, they argue, goes to show the damages are irreparable as they will not be able to regain their lost customers for several years.  (Dkt. No. 27, p. 9).

The Court finds Roady's has demonstrated a likelihood of success on this claim. Roady's had a valid economic expectancy in the "retention and renewal of its customer base." (Dkt. No. 27, p. 9).  The Defendants knew of this expectancy given their employment with Roady's and knowledge in the industry.  The evidence offered by Roady's as to the Defendants' actions in contacting Roady's customers and the evidence of a sharp increase in Roady's customer cancellations of their contracts further demonstrates Defendants' actions resulted in damages to Roady's.  Further, the interference was wrongful as it violated the non-compete clause with Defendant Rojas and involved disclosure of confidential information.  However, as described more fully below, the Court finds Roady's has not shown the damages alleges are irreparable.

### D.   Tortious Interference with Contract Claim

"Tortious interference with contract has four elements:  (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach."

MEMORANDUM ORDER - 13

Commercial Ventures, Inc. v. Rex M. & ynn Lea Family Trust, 177 P.3d 955, 964 (Idaho 2008) (citation omitted).  "The plaintiff must establish these elements before the burden switches to the defendant to explain the interference with the plaintiffs' contracts." Northwest Bec-Corp., 41 P.3d at 269 (citation omitted).

Here, Roady's claims that the Defendants' are the cause of Roady's customers breaches of their contract obligations.  Roady's has offered an exhibit showing twenty-one truckstops assigned to the Defendants that were contacted, Defendant Witzel admitted to contacting Roady's customers to solicit their business, and alleging that Defendant Rojas told Roady's customers how to breach their contracts.  (Dkt. No. 9, Ex. 2, Dkt. No. 27, p. 8). Roady's contends that it averaged only eight mid-contract cancellations per year but following the Defendants' conduct they have lost almost twenty customers in a two month period.  (Dkt. No. 27, p. 7).  Roady's argues the Defendants disparaged Roady's and made promises to the customers to induce them to break their contracts with Roady's and points out that the cancellation notices Roady's received from its customers were all identical, which further evidences the Defendants unlawful conduct.  Based on the current record, the Court finds Roady's has demonstrated a likelihood of success on this claim.  However, as discussed below, the Court finds the damages alleged are not irreparable.

### E.    Unfair Competition Claim

"Idaho recognizes the tort of unfair competition."   Woodland Furniture, LLC v. Larsen, 124 P.3d 1016, 1023 (Idaho 2005) (citation omitted). "The law of unfair competition has its roots in the common-law tort of deceit; its general concern is with protecting

consumers from confusion as to source." Id. (quoting Bonito Boats, Inc., v. Thunder Craft

Boats, Inc., 489 U.S. 141, 157 (1989)).

In addressing Roady's unfair competition claim, both parties quote language from an

old Idaho Supreme Court decision:

> A dealer coming into a field already occupied by a rival of established
> reputation must do nothing which will unnecessarily create or increase
> confusion between his goods or business and the goods or business of his rival.
> Owing to the nature of the goods dealt in, or the common use of terms which
> are publici juris, some confusion and damage may be inevitable, but anything
> done which unnecessarily increases this confusion and damage to the
> established trader constitutes unfair competition.  The unnecessary imitation
> or adoption of a confusing name, label, or dress of goods constitutes unfair
> competition.  Where there is no reason for using a particular name other than
> to trade upon another's good will, such use of the name constitutes unfair
> competition and will be enjoined.

American Home Benefit Ass'n v. United American Benefit Ass'n, 125 P.2d 1010, 1014

(Idaho 1942) (quoting Starr v. Hotelling et al., 122 P.2d 432, 433-34 (OR 1942)).

On this claim, each side persists with the same arguments raised on the other claims.

Roady's argues the Defendants stole and continue to use Roady's proprietary information

including marketing materials which have caused and will continue to cause confusion as to

the source of the services.  (Dkt. No. 9, p. 9).  Defendants argue the use of common

information generally known and readily ascertainable is not unfair competition.  (Dkt. No.

14, p. 17).

Roady's allegations here are that the Defendants have disparaged Roady's name and

reputation in the industry in order to steal their customers and have done so by using

proprietary information to distinguish themselves from Roady's.  Thus, Roady's case is not

MEMORANDUM ORDER - 15

that the Defendants have caused confusion between the two companies but have instead

sought out to steal Roady's customer base by differentiating themselves from Roady's.  As

such, the Court finds it has failed to show a likelihood of success on this claim and, further,

that any harm is irreparable.

> **F.     Conversion Claim**

"Generally, conversion is defined as a distinct act of dominion wrongfully asserted

over another's personal property in denial of or inconsistent with rights therein."  Peasley

Transfer & Storage Co. v. Smith, 979 P.2d 605, 616 (Idaho 1999).  Roady's claims the

Defendants had no right to access Roady's computer and email servers after their

employment had ended.  Defendants deny taking any information from Roady's computer

system and email server.  Further, Defendants maintain that any information they have was

the result of their own labor and experience, there are no secrets in this industry, and the

information is readily available to all marketing groups.  (Dkt. No. 14, p. 17).

Based on the foregoing the Court finds Roady's has shown a likelihood of success

on this claim.  Defendants dispute taking and/or using any confidential material from

Roady's.  As determined above, however, the Defendants' emails indicate otherwise.

Defendants also argue that they were the source of the information and, therefore, the

conversion claim cannot lie.  The record indicates otherwise.  As discussed above, Roady's

has shown much of the information at issue was not public.  In particular, the information in

the Vendor Quick Reference Sheet was not generally available to the public and the

Defendants were not the source of the information as compiled by another Roady's

MEMORANDUM ORDER - 16

employee.  Although the Court finds Roady's has demonstrated a likelihood of success on this claim, Roady's has not demonstrated the damages resulting from this claim are irreparable.

### G.      Breach of Contract and Implied Covenants of Good Faith and Fair Dealing

"Idaho law recognizes a cause of action for breach of an implied covenant of good faith and fair dealing.  Such a covenant is found in all employment agreements, including employment at-will relationships."  <u>Cantwell</u>, 191 P.3d at 213 (citation omitted).  "The covenant requires the parties to perform, in good faith, the obligations required by their agreement.  An action by one party that violates, qualifies or significantly impairs any benefit or right of the other party under an employment contract, whether express or implied, violates the covenant."  <u>Id.</u>  (citations omitted).

Roady's claims the Defendants entered into employment agreements and binding non-compete and nondisclosure agreements with Roady's.  (Dkt. No. 9, p. 9).  Defendants have breached these agreements and covenants, Roady's argues, by stealing Roady's proprietary information and directly competing with Roady's.  Defendants contend that they never signed a written agreement nor entered into an oral agreement with Roady's.  Even if a contract exists, Defendants maintain they did not breach the contracts because they did not take any proprietary information nor have they used any such information in their new business.  (Dkt. No. 14, p. 18).

MEMORANDUM ORDER - 17

As to Defendant Witzel, Roady's points to an affidavit from Bob Lee as evidence of an oral non-compete agreement.  (Dkt. No. 22, Aff. 2).  Defendant Witzel denies that any such agreement was made.  (Dkt. No. 14, Aff. 1).  The Court finds Roady's has failed to show a likelihood that a non-compete contract exists between it and Defendant Witzel.  The only evidence of this alleged agreement is the affidavit of Mr. Lee which is disputed by Defendant Witzel's affidavit.

As to Defendant Rojas, Roady's points to written covenant not to compete that she signed while employed by Truckstops Direct Inc., which states:

> For a period of on (1) year from and after the below noted individual is either voluntary or involuntary terminated from the company or its successors and assigns continue to operate the company during said one (1) year period.  The individual listed below agrees to not directly or indirectly (a) induce or attempt to persuade any former or current ... participant in the company's business to terminate such employment or other relationship in order to enter into a relationship with the below listed individual or any business organization in which the individual is a participant in any capacity whatsoever, or any other business organization in competition with the Truckstops Direct Business; or (b) solicit any customer or Company for whom services were performed while below listed individual was employed by the Truckstop Direct or which the individual solicited on behalf of Truckstops Direct Inc. or (c) engage in any business that would provide services to any company or individual that services where or are provided by Truckstops Direct Inc.

(Dkt. No. 9, Ex. A).  Roady's argues as the successor to Truckstops Direct Inc. it is able to enforce the covenant not to compete as to Defendant Rojas.  Defendants counter that Roady's was not a party to the covenant not to compete and, even if it was assignable, it is unenforceable as vague and overly broad.  (Dkt. No. 14, p. 18).

MEMORANDUM ORDER - 18

The Court finds Roady's has demonstrated a likelihood that a non-compete contract exists between it and Defendant Rojas. The non-compete contract that Defendant Rojas signed with her prior employer appears to be assignable.  "Generally, a non-compete covenant ancillary to the sale of a business is assignable and an express assignment of the covenant to the subsequent purchaser is unnecessary; the covenant is treated as part of the goodwill of the business sold." Bybee v. Isaac, 178 P.3d 616, 623 (Idaho 2008).  Here, the non-compete between Defendant Rojas and Truckstops Direct Inc. expressly provides that it is assignable.  The Court recognizes that the Idaho Supreme Court has noted a difference of opinion exists as to whether a non-compete covenant is assignable in an employment contract as opposed to a non-compete ancillary to the sale of a business.  Bybee, 178 P.3d at 623 n. 3.  There is not enough information in the record for the Court to decide this question at this phase of the case.  The Court here finds only that Roady's has shown a likelihood of success on this question at this preliminary injunction stage.

Whether the Defendant's conduct amounts to a breach of the non-compete contract and/or the implied covenant of good faith and fair dealing is a closer call.  "Generally speaking, non-compete provisions are permissible means to protect employers from their former employees who would use proprietary or other confidential business information to compete against them." Intermountain Eye and Laser Centers, P.L.L.C. v. Miller, 127 P.3d 121, 128 (Idaho 2005) (citations omitted).  "An employer also has 'a protectable interest in the customer relationships its former employee established and/or nurtured while employed by the employer and is entitled to protect itself from the risk that a former employee might

MEMORANDUM ORDER - 19

appropriate customers by taking unfair advantage of the contacts developed while working for the employer.'  This rule recognizes the general point of non-compete provisions in the first place: to protect employers from 'the detrimental impact of competition by employees who, but for their employment, would not have had the ability to gain a special influence over clients or customers.'"  Id. at 128-29.  Defendants maintain their claim that the information they have used in starting up their new business is information readily known in the industry or that they were the source of and acquired prior to working for Roady's. Here, however, Roady's has shown a protectable legitimate business interest in protecting its customer base and that some of information in question was confidential.

Further, Roady's has demonstrated Defendant Rojas' interference was intentional. "In a case involving a non-compete covenant in an employment contract, [the Idaho Supreme] Court held there was support to find lack of intentional interference when the subsequent employer told the former employee not to contact certain customers and further advised the employee not to breach the agreement."  Bybee, 178 P.3d at 624 (citing Ins. Assocs. Corp. v. Hansen, 782 P.2d 1230, 1234 (Idaho 1989)).  "The intent of the intentional interference requirement can be inferred ... from evidence of conduct substantially certain to interfere with the contract."  Id. (citations and quotations omitted).  Here, Roady's claims that Paul Rodgers discussed the non-compete with Defendant Rojas after she terminated her employment with Roady's and that she acknowledged the agreement.  (Dkt. No. 22, Ex. 1). This demonstrates that Defendant Rojas' actions contrary to the covenant not to compete

MEMORANDUM ORDER - 20

were intentional.  Defendant Rojas does not dispute this in her affidavit.  (Dkt. No. 14, Aff. 2).

Defendants alternatively argue that any covenant not to compete is unenforceable. The Court finds the covenant here is not so vague or broad that it would be unenforceable. See Intermountain Eye, 127 P.3d at 126-27.  In the context of employment contracts, the Idaho Supreme Court has stated that "[c]ovenants not to compete in employment contracts are 'disfavored' and 'strictly construed against the employer.'  Non-compete provisions must be reasonable, which is to say they must not be more restrictive than necessary to protect a legitimate business interest, must not be unduly harsh and oppressive to the employee, and must not be injurious to the public."  Intermountain Eye, 127 P.3d at 127 (citations omitted). "A non-compete covenant must be reasonably limited as to time, scope, and territorial extent."  Bybee, 178 P.3d at 622 (citations omitted).  Here, the one-year limitation does not seem unduly harsh so as to be unenforceable.  Further, the terms of the non-compete are sufficiently specific as to both scope and geography in light of Roady's legitimate business interest.  In sum, the Court finds Roady's has established a likelihood of success on the merits of this claim as to Defendant Rojas but not as to Defendant Witzel.  The damages allegedly suffered, however, are not irreparable.

### H.    Slander and Business Disparagement Claim

"A defamatory utterance regarding a corporation is slanderous per se when it assails its management or credit and inflict injury on its business."  Barlow v. International Harvester Co., 522 P.2d 1102, 1111 (Idaho 1974) (citation and quotations omitted)).

MEMORANDUM ORDER - 21

"(W)here a (defamation) contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes (defamatory) per se, and special damages need not be alleged." Id. at1112 (citations omitted). "The Restatement of Torts s 615 (1938) characterizes in the following manner the respective functions of the court and the jury in determining whether an utterance is slanderous per se: '(1) The court determines whether a crime imputed by spoken language is of such a character as to make the slander actionable per se. '(2) Subject to the control of the court whenever the issue arises, the jury determines whether spoken language imputes to another conduct or attributes of character which are incompatible with the proper conduct of his buisness, trade or profession.'" Id.

Roady's argues the Defendants' misrepresentations to current and potential customers of Roady's directly assails the credit of Roady's thereby inflicting injury on Roady's business. (Dkt. No. 9, p. 10). The allegations are based upon affidavit testimony by Kelly Rhinehart relaying complaints from Roady's Regional Managers who have received customer reports that Defendants are telling them how to breach their contracts and disparaging the Roady's business reputation. (Dkt. No. 9, Att. 1, Dkt. No. 23). Defendants counter with their own affidavits stating that they have no knowledge of Roady's financial condition and have not discussed it with any customers or potential customers. (Dkt. No. 14, p. 18, Att. 1, 2).

The Court finds the record before it at this time does not demonstrate a likelihood of success on this claim. The Defendants deny any discussions with customers regarding

Roady's financial condition.  Roady's claim is based on comments from its customers to its Regional Managers and to Kelly Rhinehart.  (Dkt. No. 9, Att. 1).  In particular, the Rhinehart affidavit states that "Rojas and Witzel are misrepresenting Roady's financial viability and making disparaging comments concerning Roady's creditworthiness.  Furthermore, it has come to my attention that Rojas and Witzel are also telling our customer base that Road's has made it a practice to withhold rebate checks from its customers.  None of these statements have any truth to them."  (Dkt. No. 9, p. 6).  These second and third-hand comments are not reliable at this point and are disputed by the Defendants.  As such, the Court denies the motion for preliminary injunction on this claim.

## II.    <u>Irreparable Damage</u>

As stated previously, a preliminary injunction requires the moving party to show "he is likely to suffer irreparable harm in the absence of preliminary relief."  <u>Winter</u>, 129 S.Ct. At 374.  Irreparable harm exists where monetary damages provide inadequate relief, for example in cases involving environmental damage or human suffering.  <u>See, e.g.</u>, <u>Save Our Sonoran, Inc. v. Flowers</u>, 408 F.3d 1113, 1120, 1124 (9th Cir. 2005) (environmental); <u>Rodde v. Bonta</u>, 357 F.3d 988, 999 (9th Cir. 2004) (human suffering).  "[A] preliminary injunction should only be granted if the movant does not have an adequate remedy at law."  <u>Saini</u>, 434 F.Supp.2d at 918-19 (citations omitted).  Applying these principles to the record here, the Court finds that Roady's has not demonstrated it is likely to suffer irreparable harm.

Roady's maintains that the theft of its trade secrets is irreparable, citing an unpublished case, <u>Beckman Instruments, Inc. v. Cincom Sys., Inc.,</u> 165 F.3d 914 (9th Cir.

MEMORANDUM ORDER - 23

1998) (1998 WL 783774).  The court <u>Beckman</u> was confronted with a motion for preliminary injunction in a software programs copyright and miappropriation of trade secrets case. There, the court determined the plaintiff was likely to succeed on the copyright claim and, because the trade secrets were "intertwined," granted the injunction.  <u>Id.</u>  In the Ninth Circuit there exists a presumption of irreparable harm where a plaintiff proves likely success on the merits of a copyright or trademark infringement claim.  <u>TeleTech Customer Care Mgmt., Inc. v. Tele Tech Co.</u>, 977 F.Supp. 1407, 1412 (C.D. Cal. 1997) (presumption applied in trademark infringement claim).  The same is not true, however, in the context of a trade secrets claim.  <u>Pacific Aerospace & Electronics, Inc. v. Taylor</u>, 295 F.Supp.2d 1188, 1198 (E.D. Wash. 2003) (presumption not applicable in trade secrets claim).  Unlike a copyright infringement case, "a trade secrets plaintiff who shows likely success on the merits of its claim is not entitled to a presumption of irreparable harm warranting preliminary injunctive relief."  <u>Pacific Aerospace</u>, 295 F.Supp.2d at 1198 (citation omitted).  Here, Roady's claims are not for copyright violations but instead based entirely on trade secret violations, thus, there is no presumption of irreparable damages.

The Defendants here do not dispute that "[d]isclosure of a trade secret can create irreparable injury."  (Dkt. No. 14, p. 19).  The Court agrees that public disclosure of trade secrets could support a finding of irreparable harm.[3]  However, the Court does not find that

---

[3]"Public disclosure of a trade secret destroys the information's status as a trade secret.  This harms the trade secret owner by both depriving him of a property interest and by allowing his competitors to reproduce his work without an equivalent investment of time and money."  <u>Saini v. International Game Tech.</u>, 434 F.Supp.2d 913, 919 (D. Nev. 2006) (citing <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1002-03 (1984); <u>Winston Research Corp. v. Minnesota Min. & Mfg. Co.</u>, 350 F.2d 134, 142 (9th Cir. 1965)).  "Disclosure of non-trade secret confidential information is similarly recognized as a serious harm."  <u>Id.</u> (citing <u>Union Pacific R.R. Co. v. Mower</u>, 219 F.3d 1069,

to be the case here.  Roady's argues that potential harms it could suffer if Defendants are not enjoined from using their trade secrets include incurring a market disadvantage, revelation of their trade secrets, and the loss of existing and potential customers.  The loss of customers, in particular, Roady's argues, is irreparable because there is little turnover in the industry and the industry's use of multi-year agreements.  Essentially that once these customer's are lost, Roady's will not have an opportunity to solicit their business for a few years.

The Court has considered these arguments but concludes that any injury suffered by Roady's is not irreparable and has, to a large extent, already been incurred and is recoverable through a monetary award.  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Sampson v. Murray, 415 U.S. 61, 90 (1974); Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 938 (9th Cir. 1987) ("temporary economic loss alone generally is not a basis for injunctive relief").  Thus, preliminary injunctions are not warranted where they are based on a generalized threat of lost revenue, market value, and goodwill.  Los Angeles Memorial Coliseum Com'n v. Nat'l Football League, 634 F.2d 1197, 1202-03 (9th Cir. 1980).  Losses that are merely speculative are also insufficient to support a finding of irreparable harm; the injury, rather, must be actual or imminent.  Goldie's

---

1071 n. 1 (9th Cir. 2000)).  "These harms, which are not readily addressed through payment of economic damages, are sufficient to meet the irreparable injury requirement for a preliminary injunction."  Id. The harm suffered from the revelation and use of one's trade secret can be difficult to quantify and, thus, could form the basis for finding the injury to be irreparable.  "[A]n intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm."  Pacific Aerospace, 295 F.Supp.2d at 1198 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92-93 (3rd Cir. 1992); and citing North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2nd Cir.1999) (loss of trade secrets cannot be measured in money damages).

MEMORANDUM ORDER - 25

Bookstore v. Sup Ct., 739 F.2d 466, 472 (9th Cir. 1984) (trial court's findings that plaintiff would lose goodwill and "untold" customers held speculative on appeal). The damages alleged by Roady's have already been suffered or are too speculative to support granting a preliminary injunction. Roady's evidence of damage to its existing customer relationships demonstrates that these damages have already incurred. The arguments about damages to potential customers is too speculative to support injunctive relief.

Further, the damages and harms alleged by Roady's are generalized threat of lost revenue and profits which can be adequately redressed by monetary relief. See National Football League, 634 F.2d at 1202-03. The Court does not question that if Roady's prevails that the damages it has suffered may be determined to be "substantial," however, monetary damages, even if substantial, are recoverable and "[t]ypically, monetary harm does not constitute irreparable harm." California Pharmacists Ass'n v. Maxwell-Jolly, ___ F.3d ___, 2009 WL 975458 * 3 (9th Cir. 2009) (citing National Football League, 634 F.2d at 1202;

(Dkt. No. 27, p. 13-14).[4]  Because Roady's has not demonstrated the existence of irreparable

damages the motion for preliminary injunction is denied.

## III.   Balance Hardships and Public Interest

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest."

Winter, 129 S.Ct. at 374 (citations omitted); see also Continental Airlines v. Intra Brokers,

Inc., 24 F.3d 1099, 1104 (9th Cir. 1994) (stating that courts should balance hardships

between plaintiffs and defendants in considering injunctions).  "The factors examined

above-the balance of equities and consideration of the public interest-are pertinent in

assessing the propriety of any injunctive relief."  Id. at 381.  "The public interest inquiry

primarily addresses [the] impact on non-parties rather than parties."  Sammartano v. First

Judicial District Court, 303 F.3d 959, 974 (9th Cir. 2002).

---

[4]  In Maxwell-Jolly, the Ninth Circuit recently stated:

We note also that Supreme Court case law and some of our own cases clarify that economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (internal quotation omitted)); Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."); Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 676 (9th Cir.1988); Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 938 (9th Cir.1987); Colo. River Indian Tribes v. Town of Parker, 776 F.2d 846, 850-51 (9th Cir.1985); Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 471(9th Cir.1984) ("Mere financial injury ... will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.").

Roady's generally argues it should not suffer the alleged losses of its customer base and profits as a result of the Defendant's wrongful conduct.  The Defendants argue the information is not proprietary and an injunction will effectively put them out of business. The Court finds the public interest factor is a wash since the public has an interest in keeping businesses open and also in enforcing confidentiality agreements.  In balancing the hardships, the Court finds it does not tip strongly in either sides favor.  Roady's clearly would suffer harm if their confidential information is made public and available to their competition.  This harm, however, has likely already occurred.  The Defendants would suffer from the injunction by being improperly restrained from engaging in their business with the information they have obtained through their years of experience in the industry or information generally known in the business.  The Court finds these arguments do not aid either party.

**IV.    <u>Conclusion</u>**

Based on the foregoing and the record at this stage, the Court concludes that Roady's has demonstrated that it is likely to succeed on some of its claims but has not demonstrated that it will suffer irreparable injury.  <u>See</u> <u>GoTo.com</u>, 202 F.3d at 1209 (citation omitted).  The record before the Court evidences that the damages are speculative, have already been incurred, and/or are calculable monetary damages all of which are not irreparable.  As such the motion for preliminary injunction is denied.

MEMORANDUM ORDER - 28

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **DENIES**

Plaintiff's Motion for Preliminary Injunction (Dkt. No. 3).


DATED:  **May 14, 2009**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 29